**In re UNION CARBIDE CLASS ACTION SECURITIES LITIGATION.**

**This Document Relates to All Class Actions.**

**No. 84 Civ. 8929 (JFK).**

United States District Court, S.D. New York.

Nov. 25, 1986.

Goodkind, Wechsler, Labaton & Rudoff, Plaintiffs' Liaison Counsel (Edward Labaton, of counsel), Wolf Popper Ross Wolf & Jones, Abbey & Ellis, New York City, Berger & Montague, Philadelphia, Pa., Gene Mesh Co., L.P.A., Cincinnati, Ohio, Law Offices of Joseph H. Weiss, New York City, for plaintiffs.

Cahill Gordon & Reindel (Denis McInerney, P.C., of counsel), New York City, for defendants.

## OPINION and ORDER

KEENAN, District Judge:

### I. BACKGROUND

This securities fraud class action arises out of the worst industrial accident in history, the gas leak at Union Carbide India Limited's (hereinafter referred to as "UCIL") plant in Bhopal, India. During the night of December 2–3, 1984, a leak of methyl isocyanate (MIC), a toxic chemical used in the production of pesticides, resulted in the death of at least 2,100 people with over 200,000 injured.[1] Ten days later, the first securities fraud class action complaint was filed in this matter. On May 24, 1985, the plaintiffs filed a consolidated class action complaint alleging violations of sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, *l* (1982), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5 promulgated by the Securities and Exchange Commission under section 10(b). In addition, the plaintiffs raise a state law negligent misrepresentation claim.

Plaintiff Paul A. Chesir owns shares of Union Carbide Corporation as custodian for his son and reinvested dividends in Union Carbide's Dividend Reinvestment and Stock Purchase Plans (hereinafter referred to as the "Dividend Reinvestment Program"). This reinvestment program was offered through prospectuses and registration statements published during the class period. Plaintiffs Marcia Sims and Helen Von Borstel purchased and acquired shares of Union Carbide common stock in August, 1984. These individuals sue on behalf of all those who purchased Union Carbide common stock from approximately December 13, 1981 to December 3, 1984 either in the open market, or through the Dividend Reinvestment Program, and held their shares until at least December 4, 1984. Plaintiffs have sued Union Carbide Corporation, which owns 50.9% of UCIL, Union Carbide's Chairman and Chief Executive Officer, Warren M. Anderson and its President, Alec Flamm. In addition, the plaintiffs have named as defendants the members of Union Carbide's board of directors.[2] Presently before the Court is the defendants' motion to dismiss the complaint or, in the alternative, to grant summary judgment.

---

1. For a more detailed discussion of the tragedy and its aftermath, see this Court's opinion in In re *Union Carbide Corporation Gas Plant Disaster at Bhopal, India in December, 1984,* 634 F.Supp. 842 (S.D.N.Y.1986). In that decision, the Court dismissed the personal injuries class action on forum non conveniens grounds.

2. Named are R. Manning Brown, Jr., Roberto de Jesus Toro, James L. Ferguson, Harry J. Gray, James M. Hester, Jack B. Jackson, Horace C. Jones, C. Peter McColough, Louis G. Peloubet, William S. Sneath, J. Clayton Stephenson, Russell E. Train and Catherine D. Wriston.

## II. THE ALLEGATIONS

MIC is a potentially deadly chemical used in the production of pesticides. Death or serious injury can result from exposure to even small amounts; skin contact causes severe burns. Liquid MIC can quickly vaporize when in contact with acidic materials, alkalies, amines and water. However, exposure of MIC to these contaminants can be limited through stringent safety and quality control protections.

The Bhopal plant was operating since 1977 and produced roughly 2,000 tons of pesticide per year. MIC is produced and stored in large vertical tanks. The complaint alleges that critical policy decisions were made or cleared with the management of Union Carbide in the United States. In addition, Union Carbide received periodic safety reports from UCIL.

Union Carbide's 1982 "Operational Safety Survey" reported the results of an on-site safety audit inspection of the Bhopal plant. The complaint alleges that the survey described safety deficiencies at the Bhopal plant.[3] The survey noted the shortcomings of maintenance personnel and the plant's failure to meet either American safety standards or those in place at Union Carbide's MIC plant at Institute, West Virginia. According to the complaint, the report concluded that the Bhopal plant represented, " 'a higher potential for a serious accident or more serious consequences if an accident should occur.' "

After describing the tragedy of December 2–3, 1984 and alleging theories as to its causes, the complaint asserts that Union Carbide made fifteen material omissions from the Dividend Reinvestment Prospectuses, Registration Statements, Annual Reports and Quarterly Reports issued during the class period. These alleged material omissions, which are set forth below, lay at the heart of the federal securities claim:

(i) The fact that Union Carbide manufactured and stored huge quantities of MIC, an extremely volatile and flamable chemical compound, that is one of the most toxic substances in the world and ultra-hazardous by any means of contact, the exposure to which can cause serious injury or death;

(ii) The fact that MIC was manufactured and stored in huge quantities at its subsidiary's Bhopal plant and its Institute, West Virginia plant;

(iii) The fact that the Bhopal and Institute, West Virginia plants, are located in populated areas;

(iv) The fact that release or venting of MIC into the atmosphere around Union Carbide's plants could be catastrophic because the population living near them would suffer massive numbers of deaths and injuries;

(v) The fact that reactivity of MIC can be controlled only through implementation and maintenance or rigid safety and quality control practices as set forth in paragraphs 16 and 17 above;

(vi) The facts that the Bhopal plant had safety systems and procedures relating to the manufacture, storage and venting of MIC gas that were inadequate to assure safety, as set forth in paragraphs 21 through 27 above and that there were no effective public warning systems, contingency plans or public education in case of a disaster;

(vii) The fact that the Bhopal plant had 10 major safety defects according to Union Carbide's May 1982 Occupational Safety Survey as set forth in paragraphs 23 through 26 [in the complaint], and that Union Carbide had not conducted a similar safety audit since that time;

(viii) The fact that corrective measures were not taken, or were not adequate, to remedy the major deficiencies listed in the May 1982 report;

---

**3.** The complaint alleges that these deficiencies included "the potential for a sizeable leak from storage tanks, the possibility of dust explosions in the systems, the absence of a 'fixed water spray for fire protection or vapor cloud dispersal in the MIC operating area', faulty, inade- quate and leaking valves, inadequate control of replacement parts, frequent failures of pressure gauges to function properly, the lack of 'instrument back-up' creating 'a possibility of over-filling' the tanks, high personnel turnover and operating and maintenance problems."

(ix) The fact that although the Bhopal plant's safety systems generally depended on human performance rather than automatic devices, since 1982, there had been a reduction and high turnover of personnel, as well as inadequate training of new staff such that there was insufficient qualified and adequately trained personnel to assure the adequacy of the safety systems at the plant facility;

(x) The fact that due to budget reductions, there had been sharp reductions in maintenance of safety systems and procedures;

(xi) The fact that because the Bhopal plant had safety systems and procedures that did not meet American safety standards and even were substantially less safe than the automatic safety systems in use at a similar Union Carbide plant in the United States as set forth in paragraphs 25 and 27 [of the complaint], there was a significantly higher degree of risk of a catastrophic accident at the Bhopal plant than at Union Carbide's Institute, West Virginia plant;

(xii) The fact that since December 1981, there had been several serious accidents at the Bhopal plant involving the release of MIC gas, including one after the May 1982 report, on October 5, 1983;

(xiii) The fact that, in the event of a MIC accident in which toxic gas escaped into the surrounding area, Union Carbide would be exposed to billions of losses resulting from personal injury and punitive damage lawsuits, and that its corporate image, good will and reputation would be seriously damaged;

(xiv) The facts regarding the amount of insurance coverage Union Carbide carried for industrial accidents, environmental pollution, personal injury and related items and the fact that given the nature of Union Carbide's business, dealing with extremely toxic and hazardous chemicals and other substances, Union Carbide did not carry adequate levels of insurance to protect itself from accidents or other potential liabilities; and

(xv) The fact that Union Carbide's financial rating could be downgraded as a result of the financial effects of a major MIC accident causing Union Carbide to pay substantially higher interest rates for subsequent financing.

The plaintiffs section 11 claim is asserted against all of the defendants, while the section 12(2) claim is asserted solely against Union Carbide. The section 10(b) allegations name as defendants Union Carbide, as well as Messrs. Anderson and Flamm. Plaintiffs also assert a state law negligent misrepresentation claim against all of the defendants by way of this Court's pendent claim jurisdiction.

### III. THE FEDERAL SECURITIES LAW CLAIMS

#### A. Fed.R.Civ.P. 12(b)(6)

The common thread linking each of the plaintiffs securities law claims is Union Carbide's failure to include certain statements in company disclosures. Section 11 and 12(2), as well as Rule 10b–5, all concern the omission of a material fact whose absence makes other affirmative statements misleading. While section 11 is directed to false statements in registration statements,[4] section 12(2) is aimed at false statements made in prospectuses and oral communications.[5] Section 10(b) and Rule 10b–5 are somewhat broader in scope.[6]

---

4. Section 11 states in pertinent part, "[I]n case any part of the registration statement ... contained an untrue statement of a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue...."

5. Section 12(2) states in pertinent part, "[A]ny person who ... offers or sells a security ... by the use of any means or instrument of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable...."

6. Rule 10b–5 states in pertinent part, "[I]t shall be unlawful for any person ... [t]o make any

■ However, a threshold requirement is the presence of an affirmative statement that is made misleading by the material omission. As Judge Pierce remarked while on the district court, "the plaintiffs herein have failed to identify any statements that were made misleading by reason of any of the alleged omissions. Instead plaintiffs have chosen to assert vaguely that a false and misleading impression was created. The Court finds such a pleading to be insufficient." *Ross v. A.H. Robins Co.,* [1978] CCH Fed.Sec.L.Rep. ¶ 96, 388, at 93, 353 (S.D.N.Y.1978). *Accord Parsons v. Hornblower Weeks-Hemphill, Noyes,* 447 F.Supp. 482, 489 (M.D.N.C.1977), *aff'd per curiam,* 571 F.2d 203 (4th Cir.1978); *Ash v. Brunswick Corp.,* 405 F.Supp. 234, 245–46 (D.Del.1975).

■ In this case, the plaintiffs section 11 claim asserted against all of the defendants must be dismissed because it fails to identify any statement contained in a Union Carbide registration statement made misleading by an omission. Likewise, the claim under section 12(2) against Union Carbide must be dismissed because the complaint fails to identify any oral statement or statement made in a prospectus that is made misleading by one of the omissions.[7]

This inquiry, however, is not dispositive of the plaintiffs' claims under Rule 10b–5. Paragraph 54 of the complaint alleges that the fifteen omissions caused the following statement contained in the 1982 Annual Shareholder's Report to be misleading:

(a) Union Carbide's agricultural products business is another aiming for rigid growth. The goal of the business is to be the world's largest and lowest cost producer of carbamate insecticides. Union Carbide's expertise in carbamate chemistry gives it a special competitive edge in this fast growing market, *and exceptional qualifications for meeting rough environmental and safety standards associated with agricultural chemicals.* (emphasis added).

By the end of the decade, we expect to add nine new insectides to our roster, for a total of 11. Our intention is to have the broadest and strongest portfolios in insecticides in the industry, with products that offer important protection for all major agricultural crops of the world.

(b) A collaborative pesticide research program between the corporation and Union Carbide India Limited has been intensified.

Thus, the focus shifts to whether any, or all, of the alleged omissions can be termed immaterial as a matter of law.

■ It is well settled that a complaint should not be dismissed pursuant to Fed.R. Civ.P. 12(b)(6) unless it appears "beyond doubt that the plaintiff can prove no set of facts ... [entitling] him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Courts should be particularly hesitant to dismiss a securities complaint on grounds of immateriality. This is true whether the case involves an omission or a misstatement. Both the Supreme Court and the Second Circuit have cautioned that materiality is a "mixed question of law and fact," *see TSC Industries, Inc. v. Northway,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), and the Supreme Court has further analogized materiality to the question of negligence, *see Northway,* 426 U.S.

---

untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading."

**7.** The defendants also argue that the claims under section 11 and 12(2) must be dismissed for failure to plead affirmative compliance with the applicable statute of limitations. The Court need not reach this contention because the section 11 and 12(2) claims are dismissed on other grounds. In addition, the defendants' assertion that the complaint fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b) need not be reached because the remaining federal securities law claim is dismissed for failing to state a claim upon which relief may be granted.

at 450 n. 12, 96 S.Ct. at 2133 n. 12. In fact, this circuit recently recognized that a securities fraud complaint cannot be dismissed due to immateriality unless the alleged omissions or misstatements "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *See Goldman*, 754 F.2d at 1067; *see also Saxe v. E.F. Hutton & Co. Inc.*, 789 F.2d 105, 111 (2d Cir.1986) (adopting this standard in the context of a commodities complaint). The test of materiality is clear: "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important." *See Northway*, 426 U.S. at 449, 96 S.Ct. at 2132; *Goldberg v. Meridor*, 567 F.2d 209, 218–19 (2d Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

■ In addressing the remaining federal securities law claim, one must examine the relationship between the fifteen omissions and the affirmative statement allegedly made misleading in the 1982 Annual Report. In brief, the statement concerns Union Carbide's goals and qualifications in the carbamate insecticide area. The omissions, previously set out in full, can be broken down into three general categories. First, plaintiffs assert that Union Carbide failed to describe the manufacture, storage, risks and personnel attendant to MIC. Complaint ¶ 40(i)-(vi), (ix)-(xii). Second, it is alleged that Union Carbide did not disclose the existence of major safety defects uncovered in the May 1982 Occupational Safety Survey, or any corresponding corrective measures undertaken. Complaint ¶ 40(vii), (viii). Third, plaintiffs claim that there was no mention of the financial implications of a possible MIC accident. Complaint ¶ 40, (xiii)-(xv).

It is useful to recall the Supreme Court's teaching in *Northway* when considering the first group of omissions. In establishing the test for materiality, the Court addressed itself to the hazards of a corporation disclosing too much information in proxy materials governed by Rule 14a-9. A management fearful of substantial liability might "simply ... bury the shareholder in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking." *Northway*, 426 U.S. at 448–49, 96 S.Ct. at 2131–32.

This concern is equally applicable to publications governed by Rule 10b–5. Although the Bhopal tragedy makes it brutally clear that the dangers of MIC are anything but trivial, the same could be said of other chemicals manufactured by the defendant. To require a corporation such as Union Carbide to include in its annual report the properties, production, risks and personnel requirements of MIC, as well as the other chemicals used and produced by the defendant, would overwhelm an investor with scientific and administrative facts "not conducive to informed decisionmaking." Plaintiffs do not allege that the nature of Union Carbide's business was concealed from them when they invested. It can come as no surprise to them that some of these chemicals are extremely hazardous and that an accident could have serious consequences.

■ Although the omissions contained in paragraph 40(i)–(vi), (ix)–(xii) are interesting in retrospect, the Court concludes that they are immaterial as a matter of law, and thus cannot be the basis of a federal securities claim. As Judge Weinfeld has remarked, "[t]he determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20–20 hindsight view long after the event." *Spielman v. General Host Corp.*, 402 F.Supp. 190, 194 (S.D.N.Y.1975) (footnote omitted), *aff'd per curiam*, 538 F.2d 39 (2d Cir.1976). To permit these omissions to constitute a securities action would allow future plaintiffs to walk into court with a "materiality through hindsight" cause of action.

The omissions in paragraph 40(xiii)-(xv) of the complaint concerning the financial implications of a possible MIC accident are also dismissed for being immaterial as a matter of law. While the omissions deal with insurance coverage, corporate liability and financial ratings in relation to a poten-

tial MIC accident, the statement in the 1982 Annual Report concerns Union Carbide's ability to meet safety standards. There is no conceivable interpretation of that statement which is made misleading by the omissions contained in paragraph 40(xiii)-(xv).

The omissions contained in paragraph 40(vii)-(viii) address the May 1982 Occupational Safety Survey and Union Carbide's failure to address the safety defects uncovered by that survey. While the 1982 Annual Report mentions Union Carbide's "exceptional qualifications for meeting rough environmental and safety standards associated with agricultural chemicals," the complaint alleges that an internal corporate survey indicated that the Bhopal plant might not be meeting these standards, or was at least suffering from safety deficiencies. However, the complaint also alleges that after the survey was completed, Union Carbide received reports from UCIL describing improvements in the Bhopal plant. Some of these reports were in Union Carbide's possession before it issued its 1982 Annual Report. *See* Affidavit of John Macdonald. Thus, when Union Carbide made its statement concerning the corporation's environmental and safety qualifications, it knew that there were safety defects, but that steps were being taken to remedy these difficulties. For this reason, the Court concludes that, as a matter of law, the alleged omissions contained in paragraph 40(vii)-(viii) could not make the affirmative statement in the 1982 Annual Report misleading.

This result is consistent with the Second Circuit's approach in this area. While section 10(b) liability can result from overly optimistic corporate predictions, *see Goldman*, 754 F.2d at 1068–69; *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 164 (2d Cir.1980), the instant case does not involve a defendant's fraudulent statements of future earnings prospects. Rather, it involves a corporation's statement that it is qualified to meet environmental and safety standards. This statement is not a prediction, and is not made misleading by the fact that Union Carbide failed to conduct a second safety survey between the time the first survey was completed—May, 1982—and the time the 1982 Annual Report was issued in March, 1983. *See* Affidavit of John Macdonald. Furthermore, the statement is not made misleading by the fact that one of Union Carbide's subsidiaries had certain safety defects that were being addressed. A holding that liability could result in this case would constitute an overly expansive reading of the federal securities laws, and might encourage corporations to disclose trivial information not necessary for informed decisionmaking. *See Northway*, 426 U.S. at 448–49, 96 S.Ct. at 2131–32.

As mentioned earlier, this Court recognizes the limited circumstances in which a securities complaint should be dismissed on grounds of immateriality. However, such a dismissal is appropriate in a case, such as the one before the Court, where the complaint sounds more in possible corporate mismanagement, viewed retrospectively, than in fraud. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982).

### CONCLUSION

For the reasons set forth above, the defendants' motion is granted and the complaint is dismissed in its entirety. The Court declines to exercise jurisdiction over the state law claims pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

SO ORDERED.