**Marshall HAFT, Plaintiff,**

v.

**EASTLAND FINANCIAL CORP., Herbert L. Miller and Nicolas F. Vrabel, Defendants.**

**Civ. A. No. 90–0302P.**

United States District Court, D. Rhode Island.

Jan. 18, 1991.

Amedeo C. Merolla, Providence, R.I., Jules Brody, Melissa R. Emert and Mark Levine of Stull, Stull & Brody, New York City, for plaintiff.

William R. Grimm, Providence, R.I., Douglas M. Kraus, Marco E. Schnabl and Derek J.T. Adler of Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case is representative of a number of cases that have recently been brought against financial institutions in the wake of the downturn in this region's economy. The story is a familiar one in securities litigation. *DiLeo v. Ernst & Young*, 901 F.2d 624, 617 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). "At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud." *Id.* In the instant case, the named plaintiff, Marshall Haft, bought stock in the defendant corporation on the open market. He alleges that his recent losses on that stock resulted from the defendants' violations of several federal security laws and common law.

The defendant, Eastland Financial Corporation, is a publicly-owned holding company for Eastland Savings Bank, a Rhode Island chartered, FDIC insured stock savings bank headquartered in Woonsocket, Rhode Island. The individual defendants are Herbert L. Miller and Nicolas F. Vrabel. Mr. Miller, at all relevant times, has been Chairman and Chief Executive Officer of the corporation and the bank; Mr. Vrabel has been Treasurer of the corporation, Executive Vice President and Chief Financial Officer of the bank.

Mr. Haft brought this suit as a class action[1] after Eastland announced, on September 15, 1989, that its non-performing loans had increased dramatically due to the "deterioration in the collateral underlying certain loans." As a result, loan loss reserves were greatly increased and a related charge against earnings for $27 million was taken.[2]

Plaintiff alleges that during the class period, from July 1988 to September 1989, the defendants misrepresented the financial condition of their institution, "in a scheme and continuous course of conduct to inflate the market price of the Corporation's securities." The plaintiff further contends that the defendants accomplished this "through a series of materially misleading representations and omissions contained in the Prospectus, annual and quarterly reports issued by Eastland between July 12, 1988 and September 16, 1989." The essence of plaintiff's argument is that the defendant corporation "represented itself to the investing public as a highly successful bank which was well managed" and that it had "issued highly favorable results and portrayed its loan portfolio as being of high quality and sound." When the less than rosy announcement came on September 15, the plaintiff was, allegedly, taken by surprise.

---

1. The class, as discussed *infra* has not been certified. The term, however, is used here for ease of reference.

2. The amount of loan loss reserves apparently is a reflection of the quality of outstanding loans. "A 'loan loss reserve' is a reserve of funds set aside to cover possible losses from future loan defaults." Defendants' Brief at 2, n. * (citing J. Kolvert, *Accounting for Banks,* §§ 2.02[3], 3.05[5], 8.02[2] (1989). "Non-performing loans are loans on which required payments of interest and/or principal are more than 90 days overdue or which the lender otherwise concludes the borrower is unlikely to be able to service." *Id.* (citing J. Kolvert, *supra,* at §§ 2.02[3], 3.05[5], 8.02[2] ).

Plaintiff claims jurisdiction in this Court pursuant to Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and the principles of pendent jurisdiction. The complaint consists of four counts: Count I is against all defendants for the violation of Sections 11 and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77k and 77o, Count II is against all defendants for the violation of Section 10(b) and Rule 10b–5, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5 and Section 20, 15 U.S.C. § 78t of the Securities Exchange Act of 1934 ("1934 Act"), Counts III and IV are against all defendants for state law violations sounding, respectively, in common law fraud and negligent misrepresentation. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6).

Because I find, for the foregoing reasons, that the plaintiff has failed to state a claim upon which relief can be granted and that, more specifically, plaintiff has failed to plead with the requisite particularity, defendants motion is granted and plaintiff's case is dismissed without prejudice.[3]

*Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5*[4]

■ Although it is not strictly "chronological," I will begin my analysis with Count II of plaintiff's complaint—the alleged violations of Section 10 of the 1934 Act. To state a claim under Section 10(b) and Rule 10b–5, the factual allegations in the complaint must indicate that 1) the defendants misrepresented or omitted material facts in connection with the purchase or sale of securities; 2) that the plaintiffs relied on such misrepresentations or omissions to their detriment, and 3) that the misrepresentations or omissions were made with scienter. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 205–06, 96 S.Ct. 1375, 1386–87, 47 L.Ed.2d 668 (1976). Pursuant to Fed.R.Civ.P. 12(b)(6), such a complaint generally should not be dismissed if it satisfies Rule 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102.

■ When the complaint sounds in fraud, however, Fed.R.Civ.P. 9(b) applies. Rule 9(b) states that "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." This rule, known as the "particularity requirement", applies to Section 10(b) and Rule 10b–5 claims because *"fraud lies at the core of the action."* *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (emphasis in original). The heightened pleading standard must, therefore, be applied to plaintiff's Section 10 claims. *See New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288–89 (1st Cir.1987); *Hayduk,* 775 F.2d at 442;

---

**3.** This Court has been provided with recent opinions from district courts in this circuit ruling on motions to dismiss complaints quite similar to the instant complaint. The cases have gone both ways. Given the confusion in the district courts of this circuit regarding the proper standard for security fraud complaints and the liberal amendment policy of the federal rules, *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), I will give the plaintiff the opportunity to amend his complaint. Such amendment, however, is allowed only in light of the proviso stated, *infra,* at the conclusion of this memorandum.

**4.** 17 C.F.R. § 240.10b–5 states in part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange ...
(b) To make any untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...
in connection with the purchase or sale of any security.

*Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir.1984). Plaintiff's Section 10 claims will not survive dismissal unless each element of the claim is pled with "particularity." Whether a complaint is "particular" enough to avoid dismissal is, necessarily, a fact oriented determination. The First Circuit precedent, therefore, although quite clear in concept, is difficult to apply without first exploring the basic purposes of the particularity requirement as they have been outlined by our Court of Appeals.[5]

To begin, the First Circuit has stated that:

> [g]enerally, there are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit';[6] and (3) to safeguard defendants from frivolous charges which might damage their reputations. *Becher,* 829 F.2d at 289 (citations omitted).

The plaintiff has argued that in the First Circuit, notice is the main purpose of the rule. *Hayduk,* 775 F.2d at 444. In *Hayduk,* however, the Court of Appeals stated that notice is "*a* main purpose of the rule." *Id.* (emphasis added). The statement in *Hayduk* does no more than state one of the main purposes; it does not denigrate the others. Moreover, in *Hayduk* itself, the court also states that a purpose of the rule

is to appraise and prevent strike suits. *Id.* at 443.

■ To avoid the evils caused by mere conclusory allegations of fraud, the First Circuit has stated that "[r]ule 9(b) requires 'specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred.'" *Id.* at 444 (citing *McGinty v. Beranger,* 633 F.2d 226, 228 (1st Cir.1980); *Wayne,* 739 F.2d at 13–14). From this quote, the plaintiff contends that once the complained of statements have been set forth verbatim in the complaint with specifics as to time and place, the particularity requirement has been met. The inquiry, however, does not end with this technical compliance. The circumstances of the misrepresentation must be specified; the specific basis for the claim must be alleged. *See Hayduk,* 775 F.2d at 444. Although the "circumstances or evidence from which fraudulent *intent* could be inferred," *Hayduk,* 775 F.2d at 444, need not be alleged with particularity;[7] this does not mean that a complaint need not give any indication of the basis upon which it alleges fraud. The fact that a plaintiff, to avoid dismissal, can generally allege scienter (the third element in a Section 10 claim), does not mean that the plaintiff has no obligation to indicate some basis for suspecting that there has been a misrepresentation or omission of a material fact (the first element in a Section 10 claim).[8] Defendants must be apprised of

---

5. Both the defendant and the plaintiff have submitted along with their memoranda, district court cases from this circuit with complaints markedly similar to the instant one. These cases have gone both ways with regard to particularity; each district judge presenting his view of First Circuit precedent. Plaintiff has submitted *Akerman v. Amoskeag Bank Shares,* No. C–90–119L (D.N.H.1990) and *Save–On Surplus Pension Plan v. United Saver's Bancorp.,* CA No. 89–543D, 1990 WL 264538 (D.N.H.1990). Defendant has submitted *Akerman v. Bankworcester Corp.,* 751 F.Supp. 11 (D.Mass.1990) and *Wilkes v. Heritage Bancorp,* CA No. 90–11151F & 90–11285F, 1990 WL 263612 (D.Mass.1990) (Ponser, M.)

6. "A 'strike suit' is defined as a derivative action instituted by a minority of stockholders for the purpose of oppressing the majority and involv-

ing the corporation itself in disaster for selfish purposes and for reasons not always revealed." 27 A.L.R. Fed. 407, § 6 at n. 6. With regard to Rule 9(b), the First Circuit has refined this definition to include largely groundless suits brought to increase the settlement value of the case. *Wayne,* 739 F.2d at 13.

7. The second sentence of Fed.R.Civ.P. 9(b) states that "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."

8. To reiterate, the factual allegations in a Section 10 complaint must indicate that 1) the defendants misrepresented or omitted material facts in connection with the purchase or sale of securities; 2) that the plaintiffs relied on such misrepresentation or omissions to their detriment, and 3) that the misrepresentations or

what they did wrong. *See id.* at 445. A complaint must do more than offer speculation, it must make some step toward showing that "fraud was actually committed." *Wayne,* 739 F.2d at 14.

What allegations are, therefore, necessary to meet the first element of a Section 10 claim? It has been suggested that a "complainant's failure to describe *how* the challenged statements are misleading cause it to run afoul of Rule 9(b)...." *Konstantinakos v. F.D.I.C.,* 719 F.Supp. 35, 39 n. 7 (D.Mass.1989) (emphasis added). A plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo,* 901 F.2d at 627. "A plaintiff has an obligation to

explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue." *Loan v. FDIC,* 717 F.Supp. 964, 967 (D.Mass.1989). In other words, a complaint must "try to explain how any of the challenged statements were untrue." *Id.*

In the instant case, the plaintiff, in its complaint, has quoted extensively from various reports issued by the defendant.[9] Then, in Paragraph 42, plaintiff attempts to indicate how the quoted statements are misrepresentations.[10] The "how" of this complaint is so general that it appears that Paragraph 42 might apply to any financial institution in the Northeast.[11] On the basis of this complaint, I cannot see how the

omissions were made with scienter. *See Ernst & Ernst,* 425 U.S. at 205–06, 96 S.Ct. at 1386–87.

9. The plaintiff's complaint contains 34 pages, typed, single-spaced, of statements and charts from the defendant corporation's registration statement and prospectus, its annual 10–K Forms and annual reports.

10. The complaint states:

The defendants, in a scheme and continuous course of conduct to inflate the market price of the Corporation's securities, throughout the Class Period, knowingly or recklessly omitted material facts or misrepresented material facts to the investing public, including, but not limited to the failure to disclose that: (a) in its efforts to expand its business and to inflate its reported earnings, the Corporation had overconcentrated its loan portfolio in customers in the real estate and commercial sectors, thus exposing it to serious risk of material losses, only a small percentage of which had been written off, reflected adequately in its loan loss reserves, or classified as nonperforming loans prior to September 30, 1989; (b) total loan loss reserves were not maintained at an adequate level in light of the prevailing economic conditions and the concomitant high risk of noncollectability of a significant portion of the Corporation's loans; (c) with respect to those loans, the Corporation's credit review and authorization standards and policies and systems of internal controls were not functioning adequately and were being disregarded by senior officers of the Corporation in order to maintain artificially high loan and earnings growth; (d) the Corporation's lending practices and controls had become increasingly unmanageable as a result of imprecedented (sic) growth and deregulation and lending officers were entering into high-risk and speculative loans

which were not being adequately supervised, controlled, or directed by the Corporation's Board of Directors or senior management, including the individual defendants; (e) the Corporation's management was inadequate to supervise and properly control the lending activities in which the Corporation had engaged, particularly those in the commercial and real estate sectors and the Corporation did not have an effective early warning system for management to take corrective action to minimize losses; (f) the Corporations' earnings, assets, and net worth were materially overstated and inflated throughout the Class Period due to, *inter alia,* grossly inadequate provisions for loan loss reserves; (g) the Corporation throughout the Class Period understated nonperforming loans and failed to provide adequate loan loss reserves for problem loans promptly and properly; (h) the real estate and commercial loan policies of the Corporation were not prudent and reliable and was not being followed; (i) the Corporations' overall asset quality was not sound; (j) the Corporation did not have the flexibility to react to the changing operating environment for financial institutions; (k) the Corporation was not pursuing conservative lending strategies to protect the integrity and consistency of its financial performance; and (*l*) the Corporation had not throughout the class period taken all adjustments which were necessary for a fair presentation of the consolidated financial statements.

11. In fact, as I will discuss *infra,* this Court has received from the parties a number of other complaints filed in various district courts across the country by one of the plaintiff's law firms that include paragraphs that are quite similar to

plaintiff has "distinguish[ed his] situation from that of many others who are adversely affected by business reverses." *DiLeo*, 901 F.2d at 627. This Court, like the court in *DiLeo* "cannot tell from reading [the complaint] why [the plaintiff believes] that the problems were so apparent" that the misrepresentations amount to fraud. *Id.* There is no concrete examples or references to the quoted statements and charts in the earlier paragraphs of the complaint. Plaintiffs have only "chosen to assert vaguely that a false and misleading impression was created." *In re Union Carbide Class Action Securities*, 648 F.Supp. 1322, 1326 (S.D.N.Y.1986).

"To allow [plaintiff] to proceed with discovery on the basis of these purely speculative allegations of fraud would be to issue a license for a 'fishing expedition' in uncharted waters." *Wayne*, 739 F.2d at 14. In cases governed by Rule 9(b), "the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action. The mandate for specificity is a product of 'the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing....'" *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 (D.R.I.1984) (citing *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972). Moreover, to allow such a complaint to avoid dismissal would be to ignore and emasculate Rule 9(b).

The analysis above reflects the First Circuit's articulation of the ideas underlying Rule 9(b). With regard to the first purpose of the rule, notice, plaintiff contends that it has provided adequate notice by citing to specific statements and claiming that those statements are misrepresentations based on the general allegations continued in Paragraph 42. This Court cannot agree; the defendants cannot "prepare meaningful responses" based on this complaint. *See Becher*, 829 F.2d at 289. Defendants must be apprised of what they did wrong. *Hayduk*, 775 F.2d at 445. Plaintiff has zealously provided the defendant with page after page of statements and charts; how is the defendant to determine what parts of these statements are alleged to be misrep-

resentations? The plaintiff has not provided the defendant with any focus. When plaintiff contends that "the [defendant] has not throughout the class period taken all adjustments which were necessary for a fair presentation of the consolidated financial statements," how should the defendant begin to answer this charge? Which figures, in the numerous charts reproduced in the complaint, does plaintiff contend are misrepresentations? While plaintiff certainly has no obligation to present the evidence that will prove his case at this point in the litigation, he must give the defendant some hints with regard to the fraud which is alleged. Defendant needs more than mere speculations to respond.

The Court of Appeals has indicated that complaints which merely re-state the elements of a claim do not meet the particularity requirement. *See Hayduk*, 775 F.2d at 444–45. Notice as broad and lacking in focus as the notice provided in the instant complaint does not go very much further than a restatement of the claim's elements in terms of notice. Notice so broad is no real notice at all.

> As to the strike suit rationale, Rule 9(b) "operates to diminish the possibility that 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence....'" *Wayne*, 739 F.2d at 13 (citations omitted).

This country is currently in the midst of an economic downturn. Every day there are reports of banks nearing calamity and investors who are suffering as a result. It may be that fraud is the cause of some of these disasters, but is it the cause of all of them? How is a court to judge which complaints are valid and which are not, without some particularity and specificity in the pleadings? Plaintiff contends that because it does not yet have access to all of the defendant's records, it cannot be ex-

---

Paragraph 42 of the instant complaint. See, *infra,* note 14.

pected to be very specific.[12] This, however, is not the position taken by the First Circuit Court of Appeals. In *Becher*, the court stated that it strictly applies Rule 9(b) even when fraud relates to matters peculiarly within the knowledge of the opponent. 829 F.2d at 288.[13] Allegations based on information and belief "do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded." *Id.* If this were not the case, Rule 9(b) would, arguably, often be moot. This does not mean that plaintiffs must somehow divine specific evidence; it only means that plaintiffs must be able to suggest something beyond mismanagement. Plaintiffs must be able to convey with their complaint some sense of how they came to believe that fraud was the heart of their losses.[14] Only then can a court be satisfied that the complaint has some substance and that the suit is not being brought merely to enhance the settlement value of the case.

In the instant case, because the complaint does not begin to allege why the statements are fraudulent—why there may have been *wrongdoing*—I find that there is not enough substance to allow this case to continue in its present form. The lack of an indication of wrongdoing raises the specter of a strike suit; the type of suit the First Circuit particularly wants to avoid when fraud is alleged. Defendants are tempted to settle, rather than litigate, to avoid the expense and the possible damage to their reputations that can arise from public litigation.

This brings me to the final purpose of Rule 9(b), which is, specifically, to "safeguard defendants from frivolous charges which might damage their reputations." *Id.* at 289. In *Lopez*, then District Judge Selya, elaborated on this theme when he stated that "[t]he mandate for specificity is a product of a 'desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing.'" 582 F.Supp. at 766 (quoting *Segal v. Gordon*, 467 F.2d at 607). Although it is of the utmost importance to keep the courtroom doors open to those who have been wronged, the particularity requirement creates a very delicate balance between the rights of such individuals and the rights of those who are accused. When fraud is pled, the case in not "run-of-the-mill," *id.*, defendant's have much to lose even if a violation is not ultimately proved. To allow the instant complaint swings the balance too far in the direction of the plaintiff. The defendants are being accused of fraud and may be subject to damage even absent specific allegations of wrongdoing. I conclude, therefore, that the requirements of Rule 9(b) have not been met.

■ Rule 9(b), however, is not the only barrier that the plaintiff must scale. Not only does the complaint fail to meet the particularity requirement, the complaint does not even state a claim that can withstand dismissal under Fed.R.Civ.P. 12(b)(6).

---

**12.** The plaintiff's complaint, in its introductory sentence, states that the entire complaint with the exception of Paragraph 5 which regards the plaintiff's own stock purchases, is based on information and belief.

**13.** Although the plaintiff contends that the First Circuit does not apply Rule 9(b) as strictly as some other circuits do (citing particularly to the *DiLeo* case in the Seventh Circuit Court of Appeals), this Court has found no evidence to suggest that our Circuit Court of Appeals does not apply Rule 9(b) strictly. *See Becher*, 829 F.2d at 288; *Hayduk*, 775 F.2d at 444 n. 2 (the liberal pleading rule of Fed.R.Civ.P. 8 does not dominate Fed.R.Civ.P. 9(b) when the particularity requirement is not met).

**14.** I will not address defendants' allegation that the case before me is one of a series of strike

suits. Defendants have submitted to me a number of complaints filed by the same attorneys who are representing the plaintiff in the instant case that are virtually identical as far as the allegations of fraud are concerned. See, for example, complaints filed in *Feigenbaum v. Bankeast Corp.*, C.A. No. 90049L (D.N.H.1990); *Balsam v. Eastchester Financial Corp.*, CV 90–2947 (E.D.N.Y.1990); *Zucker v. MNC Financial, Inc.*, CA No. 90–1319 (D.Md.1990); *Hall v. Southeast Banking Corp.*, CA 90–00838 (S.D.Fla.1990). This Court will not divine the intention of the plaintiffs involved in any or all of these suits. What I do conclude, however, from the similarity in the complaints is that the allegations in the instant complaint are too general when held up against the strict standard of Fed.R.Civ.P. 9(b).

"The United States Supreme Court has held that the federal securities laws do not regulate 'transactions which constitute no more than internal corporate mismanagement.'" *Akerman v. Bankworcester Corp.*, 751 F.Supp. 11, 12 (D.Mass.1990) (citing *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977)). In *Akerman,* Judge Skinner, assessing a complaint that is markedly similar to the complaint in the instant action, noted that the plaintiffs "ha[d] not pointed to a single specific misrepresentation or material omission in any of the Bank's reports." *Id.*[15] "Absent details of specific misrepresentations or omissions of material facts which were required to be disclosed, ... [a] complaint [may] do no more than state a claim for corporate mismanagement. And it is axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement." *Konstantinakos,* 719 F.Supp. at 39, n. 7 (citing *Santa Fe,* 430 U.S. at 477–80, 97 S.Ct. at 1302–04).

Looking again to Paragraph 42 of the instant complaint, this Court finds that it does no more than allege corporate mismanagement. Among other things, the plaintiff alleges that the defendant failed to disclose that it "overconcentrated its loan portfolio in customers in the real estate and commercial sectors," that their "loan loss reserves were not maintained at adequate levels," that the defendant's "internal controls were not functioning adequately," that the defendants lending practices had become "unmanageable," that the defendant's management was "inadequate," that because the loan loss reserves were "inadequate" the defendant's earnings were overstated, that the defendants loan policies "were not prudent and reliable," that the defendant's "overall asset quality was not sound," that the defendant lacked the "flexibility to react to the changing operating environment," that the defendant was not "pursuing conservative lending strategies," and finally that the defendant had not taken "all adjustments which were necessary for a fair presentation of the consolidated financial statements." See *supra* note 10 for full text of Paragraph 42.

The complaint abounds with words highlighting the possibility that the defendant corporation was poorly managed. Inadequacy, inflexibility, lack of prudence, unmanageable—all words alleging that the defendant was not up to the task of managing the bank. Failing to disclose possible mismanagement or incompetence does not state a federal securities law claim. *See Santa Fe,* 430 U.S. at 477–78, 97 S.Ct. at 1302–03. Therefore, looking at all of the allegations in the light most favorable to the plaintiff, as I must, I find, that the plaintiff has failed to allege facts which would entitle him to relief. *See Conley,* 355 U.S. at 47, 78 S.Ct. at 102. Thus, under the heightened scrutiny of Fed.R. Civ.P. 9(b) and under the more general Fed.R.Civ.P. 12(b)(6) standard, defendants' motion to dismiss plaintiff's Section 10 claim is granted.

*Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k*

■ Count I alleges violations of Section 11 of the 1933 Act. "The common thread linking each of the plaintiffs securities law claims is [the defendant's] failure to include certain statements in [its corporate] disclosures. Section 11 ... as well as Rule 10b–5, ... concern the omission of a material fact whose absence makes other affirmative statements misleading." *In re*

---

**15.** Paragraph 32a of the *Akerman* complaint tracks Paragraph 42 of the instant complaint with only small variations. Sections (a) through (g) are virtually identical. What distinguishes these sections is that in section (a), the *Akerman* complaint alleges that Bankworcester had overconcentrated its loan portfolio in the commercial sector, the *Haft* complaint speaks of overconcentration in the commercial and real estate sectors; in section (d), the *Haft* complaint is different in that the complaint adds a clause, "as a result of imprecedented (sic) growth and deregulation," and section (e) of the *Haft* complaint adds, "in real estate." The *Haft* complaint then adds several new paragraphs of allegations, sections (h) through (*l*). None of those go any further toward stating a claim for relief under the federal securities laws. See *supra* note 10 for sections (h) through (*l*) of the *Haft* complaint.

*Union Carbide,* 648 F.Supp. at 1325.[16] "An essential element of [both the plaintiff's Section 10 and Section 11 claims] is a misrepresentation or omission of a material fact. No liability exists for either claim in the absence of an allegation that a particular statement was untrue, or that the statement failed to disclose a material fact." *Loan,* 717 F.Supp. at 966.[17] While 10b–5 reaches a broad range of misrepresentations and omissions, Section 11 is concerned only with misleading information contained in a securities registration statement or prospectus. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). "[Section 11] was designed to assure compliance with the disclosure provisions of the [1933] Act by imposing a stringent standard of liability on parties who play a direct role in a registered offering." *Id.*

What distinguishes a Section 11 claim from a Section 10 claim other than the registration statement or prospectus requirement, is that scienter must be proved in a Section 10(b) action. Such is not the case for a Section 11 claim. *See Ernst,* 425 U.S. 185, 96 S.Ct. at 1383–85. "While proof of fraud in connection with an offering of a registered security will support an action under Section 11, it is not necessary for maintaining [such] a claim." *In re Lilco Securities Litigation,* 625 F.Supp. 1500, 1503 (E.D.N.Y.1986).

"Although it is arguable that Section 11 claims should be subject to the particularity requirement, the absence of scienter and reliance requirements may be viewed as not involving fraud." T. Hazen, The Law of Securities Regulation § 7.3 (Supp.1990). A number of courts that have considered the issue, have not applied Rule 9(b) to Section 11 claims. *See, e.g. Schoenfeld v. Giant Stores Corp.,* 62 F.R.D. 348, 350–51 (S.D.N.Y.1974) ("In view of the differing elements of proof required to sustain an action under Sections 10(b) and 11, it is clear that a pleading under Section 11 is not restricted by the rule of particularity which is demanded for actions sounding in fraud."); *contra In re Elscint, Ltd., Securities Litigation,* 674 F.Supp. 374, 384 (D.Mass.1987) (Section 10 and Section 11 claims are similar in subject matter and the applicability of the pleading requirements of Rule 9(b)). The court in *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 595 (1985) argues convincingly that the policy concerns behind Rule 9(b) cannot be used to argue for the rule's application in the usual Section 11 claim:

> The short answer to defendants' argument is that the three policies behind Rule 9(b) apply to any ·charge made against any defendant, to some extent. However, only a defendant facing the particular threat that is posed by an accusation of fraud may invoke the protection of Rule 9(b). *Id.*

I believe, however, that the reasoning of the *In re Consumers* court should only apply when the Section 11 claim is not based on allegations of fraud.

In the case before me, the plaintiff has incorporated allegations of fraud into his Section 11 Count. Count I specifically references and includes the allegations in Paragraph 42 of the complaint. Paragraph 42 states that "[t]he defendants, in a scheme and continuous course of conduct to inflate the market price of the Corporation's securities, throughout the Class Peri-

---

**16.** Section 11, 15 U.S.C. § 77k, states in part:

"In case any part of the registration statement ... contained an *untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading,* any person acquiring such security ... may ... sue

1) every person who signed the registration statement

2) every person who was a director ... or partner ...

3) every person who ... is named in the registration statement as being ... a director...." (emphasis added).

Compare this language with the language of 17 C.F.R. § 240.10b–5, *supra,* note 4. Clearly, an untrue statement or an omission of a material fact is necessary to state a violation of either law.

**17.** Although District Judge Tauro was dealing with violations of Rule 10b–5 and Section 12 of the Securities Act of 1933, the language of Section 11 tracks the language of Section 10. See, *supra,* note 16.

od, knowingly or recklessly omitted material facts or misrepresented material facts to the investing public...." This is clearly an accusation of fraudulent conduct.

The First Circuit has stated that the particularity requirement applies when "fraud lies at the core of the action." *Hayduk*, 775 F.2d at 443. It is the allegation of fraud, not the "title" of the claim that brings the policy concerns of the First Circuit to the forefront. If a defendant is accused of fraud, his reputation may be damaged. A defendant facing such allegation may be pressured into a settlement merely to avoid the costs of litigation even in the absence of any wrongdoing.

This Court cannot see the logic in allowing a Section 11 claim to go forward without applying the scrutiny of Rule 9(b) when the defendant may suffer in the same way that he could suffer from an insubstantial Section 10 claim. The fact that the Section 11 claim does not require scienter does not change the situation when scienter is alleged. I find, therefore, that due to the allegations of fraud, plaintiff's Section 11 is subject to the heightened pleading standard of Fed.R.Civ.P. 9(b) and that it fails to meet that standard for the reasons I articulated, *supra*, with regard to plaintiff's Section 10 claim. Basically, plaintiff has failed to allege, with the requisite degree of particularity, any wrongdoing—the "how" of the misrepresentation is missing. Absent the "how"—some explanation of what the statement *should* have been—there is no indication that there was any misrepresentation or omission. And, such misrepresentation is, of course, a necessary element of the Section 11 claim.

■ Moreover, even absent the particularity requirement, plaintiff's Section 11 count still would not survive defendant's motion to dismiss. As I stated, *supra*, a Section 11 claim like a Section 10 claim requires an allegation of a material misrepresentation or omission. Such allegation must state more than a claim for corporate mismanagement. *See Santa Fe*, 430 U.S. at 477, 97 S.Ct. at 1302. Although plaintiff points to the statements in the defendant's prospectus and asserts that these statements are misrepresentations, plaintiff bases his assertion on Paragraph 42. Plaintiff's Section 11 claim, therefore, does not survive defendant's 12(b)(6) motion for the same reason that plaintiff's Section 10 claim did not—Paragraph 42 alleges corporate mismanagement "[a]nd it is axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement." *Konstantinakos*, 719 F.Supp. at 39 (citations omitted).

*Control Person Liability, Section 15 of the 1933 Act, 15 U.S.C. §§ 77o and Section 20 of the 1934 Act, 15 U.S.C. § 78t* [18]

■ Control Person Liability [19] under Section 15 of the 1933 Act and under Section 20 of the 1934 "are analogous and are given identical interpretations." *In re Thortec Securities Litigation*, Fed.Sec.L. Rep. (CCH) P 94,330, 1989 WL 67429 (N.D. Cal.1989) (citing *Durham v. Kelly*, 810 F.2d 1500, 1503 (9th Cir.1987)). In order to state a claim for control person liability, plaintiff must allege the existence of a securities law violation. See *supra* note 18. The same is true for claims alleging aiding and abetting. *See, e.g., Cleary v. Perfectune, Inc.*, 700 F.2d 774, 777–78 (1st Cir.1983). Because I have found that plaintiff has failed to allege a federal securities law claim that will survive dismissal and has, therefore, failed to state a primary

---

**18.** Section 77o states in part:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding ... or otherwise, controls any person liable under sections 77k or 77l ... shall also be liable jointly and severally.... Section 78t states in part: a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regula-

tion thereunder shall also be liable jointly and severally....

**19.** Beyond alleging violations of Sections 10 and 11 by all defendants, plaintiff has alleged that the individual defendants are also liable as control persons and/or aiders and abettors. Control persons are those who "'directly or indirectly induced the conduct constituting a violation or cause of action.'" *Strong v. France*, 474 F.2d 747, 752 (9th Cir.1973) (citations omitted).

**1134**

violation, plaintiff's control person allegations must also be dismissed.

*Common Law Fraud and Negligent Misrepresentation*

The assertion of pendent jurisdiction is within the discretion of the trial court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). When a court dismisses federal claims prior to trial, it should exercise that discretion and decline to hear pendent state claims. *Id.; Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990). Having found that the plaintiff has failed to state any federal securities law claims, this Court declines to exercise pendent jurisdiction over the state law claims and they are, hereby, dismissed.

*Conclusion*

To reiterate, because I have found that none of plaintiff's federal security law claims can survive defendant's motion to dismiss, said motion is granted and plaintiff's case is dismissed without prejudice. Should plaintiff decide to replead, he will be given 15 days from the date of this order to do so stating his claim with more particularly in accordance with this opinion. Any such amended pleading shall be directed to this Court. I wish to stress to plaintiff that I am allowing an amended pleading out of an abundance of caution. If such amended pleading goes no further toward meeting the particularity requirement of Rule 9(b), I will be forced to consider imposing sanctions pursuant to Fed. R.Civ.P. 11. As a result of this order, plaintiff's motion for class certification and defendants' motion for temporary stay of discovery and extension of time to respond to plaintiff's motion for class certification are passed as moot.