Marshall HAFT, Plaintiff,

v.

EASTLAND FINANCIAL CORP. and
Herbert L. Miller, Defendants.

Civ. A. No. 90–0302P.

United States District Court,
D. Rhode Island.

Aug. 28, 1991.

Sandra Blanding, Warwick, R.I., Mark
Levine, Melissa R. Emert, Jules Brody,
New York City, for plaintiff.

William Grimm, Hinckely, Allen, Snyder
& Comen, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case is before me essentially to determine whether the defendants are the perpetrators of a scheme to defraud the public in violation of the Securities Exchange Act of 1934, § 10(b) or whether the defendants are, along with the plaintiff, merely victims—casualties of this region's recent economic downturn. *See, e.g., DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). It is not the first time that this Court has been called upon to decide whether the plaintiff's complaint can survive a motion to dismiss. I will, therefore, assume familiarity with the facts and opinions and only briefly note that on January 18, 1991, I found "that none of plaintiff's federal security law claims [could] survive defen-

dants' motion to dismiss." *Haft v. Eastland Financial Corp. ("Haft I"),* 755 F.Supp. 1123, 1134 (D.R.I.1991).[1] I dismissed the complaint without prejudice and allowed time for the plaintiff to file an amended complaint. *Id.* at 1134. Plaintiff eventually filed an amended complaint and the defendants parried with another motion to dismiss. That motion was denied on July 3, 1991. *Haft v. Eastland Financial Corp.,* C.A. No. 90-0302P (D.R.I.) *("Haft II ").*[2] This case is now before me on defendants' motion for reconsideration of my July 3, 1991 Memorandum and Order.

Briefly, plaintiff's amended complaint is a class action[3] in two counts. The class period is defined as beginning on January 3, 1989 and ending on January 17, 1991. Count I is against both defendants, Eastland Financial Corporation and Herbert Miller, Chairman and Chief Executive Officer of the corporation, for violations of Section 10(b), Rule 10b–5 and Section 20 of the Securities Exchange Act of 1934 ("1934 Act"). Count II is against both defendants for negligent misrepresentation.[4]

In light of *Haft II*'s reasoning, defendants have now raised a threshold jurisdictional question. Because I am persuaded by defendants' argument with regard to standing, I, upon reconsideration, grant defendants' motion to dismiss. I regret not having spotted the jurisdictional question earlier. Now that it has been brought to my attention, however, I welcome the opportunity to correct what I believe to have been an error.

*Discussion*

"Standing is a preliminary matter to be evaluated upon the allegations of the com-

plaint." *Gabrielsen v. BancTexas Group, Inc.,* 675 F.Supp. 367, 369 (N.D.Tex.1987).

> The question whether a party has standing to prosecute a claim concerns the power of federal courts to hear and decide cases. Standing focuses on the party seeking to get his complaint before the federal court and not on the issues he wishes to have adjudicated. When the issue of plaintiff's standing is raised, the relevant inquiry is whether … the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. To satisfy the constitutional requirement, the plaintiff who seeks to invoke judicial power must stand to profit in some personal interest. Absent a showing of personal injury, exercise of power by a federal court would be gratuitous and thus inconsistent with constitutional limitations. *Id.* at 371 (citations omitted).

The fact that a case is brought as a class action does not change the calculus; named plaintiffs "cannot represent a class of whom they are not a part." *Harris v. McRae,* 448 U.S. 297, 320 n. 23, 100 S.Ct. 2671, 2690 n. 23, 65 L.Ed.2d 784 (1980) (citing *Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962)); *see Adair v. Sorenson,* 134 F.R.D. 13, 16 (D.Mass.1991) ("A court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members."); *Gabrielsen,* 675 F.Supp. at 371 n. 3 ("Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing … Standing cannot be acquired through the back door of a class action."); *Schwartz v. Novo Industri A/S,* 658

---

**1.** For a description of the facts of this case, see *Haft,* 755 F.Supp. at 1125–26. In *Haft,* this Court dismissed the complaint for failure to comply with the particularity requirement of Fed.R.Civ.P. 9(b) and for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6) in light of *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977).

**2.** For a description of the procedural history of the filing of the amended complaint, see *Haft II, supra,* slip op. at 1–2.

**3.** As will become obvious, *infra,* the class has not been certified.

**4.** In plaintiff's amended complaint, Nicholas Vrabel, Treasurer of the corporation, is no longer named. Moreover, plaintiff dropped his claim under Section 11 and Section 15 of the Securities Act of 1933 as well as his common law fraud claim. *See Haft I,* 755 F.Supp. at 1126 for a description of the original complaint.

F.Supp. 795, 800 n. 18 (S.D.N.Y.1987) ("As our Court of Appeals held in *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978), a plaintiff who cannot share in a recovery ... is not a proper representative of persons who purchased securities after other allegedly fraudulent statements were issued.").

To determine whether the named plaintiff in this case has standing sufficient to meet the constitutional case or controversy requirement, I must assess the amended complaint in light of Section 10(b) of the 1934 Act. That section "forbids persons, *in connection with* the purchase or sale of securities, from engaging in manipulation or fraud in violation of the rules promulgated by the SEC." *In re General Motors Class E Stock Buyout Securities Litigation,* 694 F.Supp. 1119, 1125 (D.Del. 1988) (emphasis added). Rule 10b–5 states that:

It shall be unlawful for any person ...

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

*in connection with* the purchase or sale of any security. 17 C.F.R. § 240.10b–5 (emphasis added).

To state a claim under Section 10(b), therefore, a plaintiff must allege a loss "resulting from reasonable reliance upon a materially false representation." *General Motors,* 694 F.Supp. at 1126. This is known as the "in connection with" requirement of Section 10(b). In other words, Section 10(b) has been interpreted by the Supreme Court as requiring, "an actual purchase or sale of a security that is connected with a challenged statement." *Konstantinakos v. F.D.I.C.,* 719 F.Supp. 35, 37 (D.Mass.1989). "Where a misrepresentation or omission causes a person to retain shares previously purchased, rather than purchase new shares or sell already owned ones, the shareholder does not have standing to bring a 10b–5 claim." *Id.* (citing *Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975)); *see Adair,* 134 F.R.D. at 16 ("Plaintiff cannot establish that he relied on events which occurred after he purchased his stock."); *Schwartz,* 658 F.Supp. at 799 (statements made "subsequent to plaintiff's purchase, are not in themselves actionable under 10(b)").

Moreover, "[w]hen the complaint sounds in fraud ... Fed.R.Civ.P. 9(b) applies. Rule 9(b) states that '[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.' This rule known as the 'particularity requirement' applies to Section 10(b) and Rule 10b–5 claims because *'fraud lies at the core of the action.'*" *Haft I,* 755 F.Supp. at 1126 (citations omitted).

Finally, plaintiff's complaint must allege more than mere corporate mismanagement. In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977), "[t]he United States Supreme Court ... held that the federal securities laws do not regulate 'transactions which constitute no more than internal corporate mismanagement.'" *Haft I,* 755 F.Supp. at 1131 (citations omitted). "'Absent details of specific misrepresentations or omissions of material facts which were required to be disclosed, ... [a] complaint [may] do no more than state a claim for corporate mismanagement.'" *Id.* (citations omitted).

This brings me to the primary issue regarding plaintiff's amended complaint—the intersection of the standing requirements and the sufficiency of the plaintiff's allegations. In light the analysis, *supra,* the plaintiff, in order to meet the constitutional standing requirement, must allege misrepresentations sufficient to withstand a motion to dismiss pursuant to the particu-

larity requirement of Fed.R.Civ.P. 9(b)[5] *and* sufficient to withstand analysis under the *Santa Fe* doctrine *and* the misrepresentations must have occurred *prior to his purchase or sale of securities.*

In *Haft II,* I found that the plaintiff stated a claim sufficient to survive Rule 9(b) and *Santa Fe* with Paragraph 24 of his amended complaint. In that paragraph, the plaintiff noted that on "June 8, 1989, Miller met with some institutional investors, rejected Merrill Lynch's assessment of Eastland stock as 'a short-term risk but a long-term buy' and dismissed concerns about Eastland's heavy emphasis on commercial real estate. Then, three months later, Eastland announced a record third quarter loss due to an increase in non-performing loans. To support the inference of fraud [necessary to survive a motion to dismiss], plaintiff [noted] that on or about April 2, 1990 Eastland filed with the SEC the following statement over ... Miller's signature: 'By mid–1989, overbuilding in the real estate area and a slowdown in the New England economy led us to realize that [the] same activities, that previously worked so well for us, were now working against us. We knew it would not be 'business as usual.' " *Haft II, supra,* slip op. at 5.[6] I found that this statement raised a reasonable inference " 'that adverse circumstances existed at the time [the statement was made] and were known and deliberately or recklessly disregarded by the defendants.' " *Id.* (quoting *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991)).

■ The problem, as pointed out by the defendants in their memorandum in support of their motion for reconsideration, with reliance on the above is that the alleged misrepresentation was made *after* the named plaintiff purchased his stock. According to Paragraph 5 of the amended complaint, Haft purchased stock in Eastland on March 27, 1989—more than two months before the alleged misrepresentation. To determine, therefore, whether there are any allegations sufficient to support jurisdiction in this case, I reconsidered the alleged misrepresentations that occurred prior to March 27, 1989. In doing so, I determined, once again, that none of the earlier statements were sufficient. See, *supra,* note 6.

■ The plaintiff's substantive allegations begin with Paragraph 15 of the amended complaint. That paragraph focuses on two statements made by defendant Miller reported in *The Providence Journal ("Journal")*[7] on January 3, 1989.

5. " '[T]here are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations.' " *Haft I,* 755 F.Supp. at 1127 (quoting *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir.1987)). In other words, to avoid dismissal on particularity grounds the plaintiff "must be able to convey with their complaint some sense of how they came to believe that fraud was the heart of their losses." *Haft I,* 755 F.Supp. at 1130. For a full description of this Court's analysis of Fed.R.Civ.P. 9(b) as applied to securities cases, see *id.* at 1126–1130.

6. Although I also stated that the inference of fraud was supported by other allegations in the complaint, Paragraph 24 contained the only primary allegation of fraud that I, at that time, found to be sufficient on its own to overcome Rule 9(b) and *Santa Fe.* Now, as I will discuss, *infra,* I believe that I was wrong and, therefore, find that even if there were not a lack of standing, Paragraph 24 would fail to state a claim that could survive dismissal.

7. Defendants have argued that "[a] serious question of law is raised in this case by plaintiff's attempt to rely on ... [what are inevitably] incomplete and inaccurate [newspaper] report[s] of defendant's purported statement[s] to meet the threshold pleading requirement of Rule 9(b)." In fact, in defendants' motion for reconsideration, they asked this Court alternatively for interlocutory appeal certification pursuant to 28 U.S.C. § 1292(b). As I have found, upon reconsideration, in favor of the defendants I need not address their request for interlocutory appeal. I would note, however, that although I believe that newspaper statements must necessarily be viewed with caution because defendants have "less than complete control over such reports", *Schwartz,* 658 F.Supp. at 799, a motion to dismiss calls for a court to accept the allegations as true. Whether the report is an accurate reflection of what was actually stated is more properly addressed on a motion for summary judgment. Because I do not find it necessary nor appropriate to formal-

According to the complaint, Miller, in an attempt to "allay the concerns of investors" with regard to "nervousness about the real estate market in Rhode Island" stated that: " 'What people don't realize, is that we have had more experience in commercial lending than a lot of other players.' " Moreover, Miller "publicly stated sometime in January 1989 that Eastland's stock should trade in the $10.50 to $11.00 range." Paragraph 17 of the amended complaint states that "[o]n or about March 20, 1989, Eastland disseminated its 1988 Annual Report to Shareholders for the year ended December 31, 1988." In that Report there was a letter, over defendant Miller's signature, which stated that: "We believe that by expanding and seeking out quality commercial real estate loans, we can sustain our growth objectives and continue to add value to our stockholders investment.' " (Amended Complaint, Paragraph 18) Miller also stated that: " 'It is ... expected that non-performing loans will be reduced in 1989....' " (Amended Complaint, Paragraph 18) In addition, according to Paragraph 20 of the amended complaint, the Review of Operations section of the Report contained the following statement: "While maintaining strict credit policy standards commercial banking efforts are focused on the small and mid-sized market, where the combination of financial risk and potential financial gain offer an acceptable rate of return."

To establish that these statements were "part of [a] continuing pattern of materially false and misleading statements made without reasonable basis," plaintiff focuses on several underlying "facts." [8] These "facts" are set forth in Paragraphs 7, 22, 30, 33, and 35 of the amended complaint.

Plaintiff alleges that the optimistic statements quoted above were misrepresentations because in an article entitled "There's more to stock tables than fine print," published in the *Journal* on December 3, 1989 and cited in Paragraph 7 of the complaint,[9] the reporter stated that, "[i]t turns out that Eastland financed a number of marginal projects." (Appendix to Defendants' Brief in Support of Motion to Dismiss the Amended Complaint ("Defendants' Appendix"), Exhibit M) This statement fails to provide the underlying factual support required by Rule 9(b). It is not a direct quote from the defendants, it is merely an analysts' opinion. "The complaint must rise or fall on allegations about defendants' conduct and not on wide-eyed citation to the gratuitous commentary of outsiders. Such commentary is irrelevant to plaintiff's claims." *Hershfang v. Citicorp,* 767 F.Supp. 1251, 1255 (S.D.N.Y.1991). Moreover, the statement, even if it were attributed to the defendants would not be adequate under the *Santa Fe* doctrine because "[t]here is no 'fraud by hindsight[.]' " *DiLeo,* 901 F.2d at 628 (quoting *Denny,* 576 F.2d at 470). The words, "it turns out" indicate that the reporter's comment is nothing more than an expression of hindsight wisdom.

Paragraph 22 is not sufficient either. That paragraph notes that, according to another *Journal* article (April 19, 1989), Miller stated that " 'I never should have said [that the stock should trade at] $10.50,' " " 'I didn't know what I was talking about.' " Plaintiff alleges that this direct quote supports the inference that when Miller earlier stated that the stock should trade in the "$10.50" range, he knowingly or recklessly misrepresented the situation. I cannot agree. Miller's earlier statement about the price of the stock was

ly convert the defendants' motion to dismiss to a motion for summary judgment, I did not consider any documents or affidavits submitted by the defendants other than the complete newspaper articles (excerpts of which appear in the plaintiff's complaint). *See Romani,* 929 F.2d at 879 n. 3; *Ballan v. Wilfred American Educational Corp.,* 720 F.Supp. 241, 247 (E.D.N.Y.1989).

**8.** "A complaint of fraud must provide 'factual allegations that would support a reasonable in-

ference that adverse circumstances existed at the time [the statement was made], and were known and deliberately or recklessly disregarded by defendants.' " *Haft II, supra,* slip op. at 2–3 (quoting *Romani,* 929 F.2d at 878).

**9.** In *Romani,* 929 F.2d at 879 n. 3, the First Circuit Court of Appeals noted that a court may consider documents cited in the pleadings in their entirety on a motion to dismiss.

merely a prediction. "Statements about future events that are plainly expressions of opinion and not guarantees are not actionable under the federal securities laws." *Hershfang, supra,* 767 F.Supp. at 1255 (citing *Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2d Cir.1991)).

To support his allegation that the defendants were not seeking out quality loans, although they said they were, plaintiff points to Paragraphs 30 and 33 of his amended complaint. In Paragraph 30, plaintiff notes that in an article in *The Woonsocket Call,* on January 5, 1990, it was reported that "Eastland as the sole bidder bought at auction the former Social Department Store building, which had been vacant for two years and on which Eastland had a third mortgage." (Defendants' Appendix, *supra,* Exhibit O) Although this may suggest that Eastland erred in extending the loan, one arguably less than prudent loan does not make defendants' earlier statements fraudulent misrepresentations. The March 1989 statement in the Annual Report that Eastland was "seeking out quality commercial real estate loans" was a broad statement, not made materially false by the existence of one bad loan. *See General Motors,* 694 F.Supp. at 1127 (quoting *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) ("For a fact to be material, 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the "total mix" of information made available.'"). Moreover, there is

no indication of when Eastland made the loan on the Social Department Store building—perhaps it was well before March of 1989.[10] This allegation cannot survive *Santa Fe.* If anything, it merely alleges negligence; "[f]ailing to disclose possible mismanagement or incompetence does not state a federal securities law claim." *Haft I,* 755 F.Supp. at 1131 (citing *Santa Fe,* 430 U.S. at 477–78, 97 S.Ct. at 1303). There is no misrepresentation sufficient to support a Section 10(b) claim.

Paragraph 33 states that the *Journal,* on April 1, 1990, reported that "Eastland Financial Corporation earned a reputation as an aggressive real estate lender that booked loans others turned away after it converted to a public company in 1988." As I discussed, *supra,* a reporter's *opinion* of Eastland's reputation cannot provide a factual basis for alleging that the defendants' optimistic statements were fraudulent or reckless. "Analysts' opinions are neither relevant ... nor admissible, and even if the 'analysts' assum[ptions]' are true, that can not reasonably lead to an inference that defendants made intentional or reckless misrepresentations to the public at an earlier time." *Hershfang, supra,* 767 F.Supp. at 1255–56.[11]

Plaintiff's final basis for his allegations is found in Paragraph 35. There, plaintiff notes that on April 18, 1990, the *Journal* reported that defendant Miller admitted that the bank "didn't monitor [its] projects." Plaintiff finds this to be in sharp contrast to the banks pre-March 27, 1989 statements.[12] I am not persuaded

10. Finally, the *Woonsocket Call* goes on to note that, "[t]he auctioneer said it was not unusual for there to be only one bidder on a commercial property, particularly one which has several liens against it." (Defendants' Appendix, *supra,* Exhibit O) To the extent that the plaintiff suggests that being the sole bidder at such an auction suggests problems that should have been disclosed, the full text of the article at least suggests the opposite.

11. Moreover, in that article, entitled, "*The Freeze is On, Credit Crunch Wounds Business, Compounds Region's Economic Woes,*" the reporter also discusses how "[b]ankers, throughout the region, are cutting back loans sharply to business borrowers, signaling the end of the lending

binge of the 1980s and threatening to push the New England economy deeper into what many now call a recession." (Defendants' Appendix, *supra,* Exhibit R) The article quotes the owner of F.H. French Company as stating that, "[w]hether it is Fleet, or Shawmut, or Bank of New England or Eastland, they are all flip-flopping, and whereas before they were overly lax, now they are extraordinarily stringent." *Id.* One could draw the conclusion that the other banks were also a bit overzealous in their lending practices, thus putting Eastland's "reputation" somewhat in doubt.

12. As I stated, *supra,* March 27, 1989 was the last date that the plaintiff purchased or sold Eastland securities.

that this statement raises an inference of fraud. "The securities laws do not put executives of public corporations to the choice of either hiding their mistakes or facing a class-action shareholder suit. In fact, the 'fundamental purpose' of the securities laws is just the opposite—'to substitute a philosophy of full disclosure for the policy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.'" *Hershfang, supra,* 767 F.Supp. at 1258 (quoting *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963) and citing *Basic,* 108 S.Ct. at 982–83). Moreover, the fact that the defendant admitted that the bank did not monitor projects sufficiently tends to refute any allegation that the earlier statement was part of a scheme to defraud. If that were true, why would the defendant essentially admit the earlier fraud? No reasonable inference is raised. *See Romani,* 929 F.2d at 878. The allegation cannot survive Rule 9(b) scrutiny.[13]

I find, therefore, that none of the pre-March 27, 1989 statements are sufficient to state a claim upon which relief could be granted. Plaintiff's allegations are backed up either by statements that do not meet the particularity requirement, i.e., statements not attributed to the defendants that merely express reporter's opinions and statements that raise no reasonable inference of fraud or allegations that fail to survive *Santa Fe* scrutiny. "[I]t is axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement." *Konstantinakos,* 719 F.Supp. at 39, n. 7. Nor do they provide a cause of action for merely failing to disclose "innocent" negligence. *See Haft I,* 755 F.Supp. at 1131 (citations omitted).

Moreover, because I believe that I erred when I previously found that the June 8, 1989 statement was actionable, see *supra* notes 6 and 13, I need only briefly address the question of whether other statements or conduct by the defendants after the

plaintiff purchased his stock (Paragraphs 22–50 of the amended complaint) are "circumstantial evidence of the fraud he alleges occurred prior to his stock purchase." *Schwartz,* 658 F.Supp. at 799.

The statements "made subsequent to [plaintiff's] purchase are not considered as primary evidence of fraud...." *Id.* at 800 n. 18. Moreover, the allegations regarding statements made after March 1989 are basically supported by the same "facts" (Paragraphs 7, 22, 30, 33, 35 of the amended complaint) that I have already rejected as support for the earlier "misrepresentations." Beyond the alleged misrepresentations, the rest of the complaint does little more than chronicle the downturn in Eastland's fortunes and cite to the defendants hopeful predictions. Looking at the complaint as a totality, I still do not find even circumstantial support for a Section 10(b) claim. As I have said before, this is yet another case where "'[a]t one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud.'" *Haft I,* 755 F.Supp. at 1125 (quoting *DiLeo,* 901 F.2d at 627). In this case, I cannot agree with the plaintiff's assessment of the situation. "Securities laws do not guarantee sound business practices and do not protect investors against reverses." *DiLeo,* 901 F.2d at 627 (citations omitted). I, therefore, upon reconsideration, grant defendants motion to dismiss. Moreover, I decline to exercise pendent jurisdiction over the state law claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990).

So Ordered.

---

**13.** It is this reasoning that has lead me to believe that, despite the now obvious standing problem, my earlier ruling focusing on the June 8, 1989 statement was incorrect. If the defendants were intentionally misrepresenting the bank's financial state in mid–1989, why would they then admit the deceit in a statement in an annual report?