**Robert G. KNOLLENBERG, et al., Plaintiffs—Appellants,**

v.

**HARMONIC, INC., et al., Defendants—Appellees.**

No. 03–16238.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 2005.

Decided Nov. 8, 2005.

David Kessler, Andrew L. Barroway, Schiffrin & Barroway, Bala Cynwyd, PA, Edward M. Gergosian, Esq., Benjamin Galdston, Barrack, Rodos & Bacine, William S. Lerach, Esq., Christopher Lometti, Jay P. Saltzman, Samuel P. Sporn, Esq., Schoengold & Sporn, P.C., New York, NY, for Plaintiffs—Appellants.

Terry T. Johnson, Esq., Cheryl W. Foung, Jerone F. Birn, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Melvin R. Goldman, Esq., Morrison & Foerster LLP, San Francisco, CA, for Defendants—Appellees.

Sanford Svetcov, Esq., Reed R. Kathrein, Esq., Patrick J. Coughlin, Esq., Susan K. Alexander, Esq., Shawn A. Williams, Esq., Stan S. Mallison, Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, San Francisco, CA, William S. Lerach, Esq., Eric A. Isaacson, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, San Diego, CA.

Before: ALARCÓN, SILVERMAN, and BEA, Circuit Judges.

MEMORANDUM *

In this securities fraud class action, Plaintiffs–Appellants Robert G. Knollenberg ("Knollenberg") *et al.* brought this putative class action against Defendants–Appellees Harmonic Inc. ("Harmonic") and C–Cube Microsystems, Inc. ("Old C–Cube") and several of their top executives for violations of securities laws in connection with the decline in stock price of both companies around the time of the May 3, 2000 merger between Harmonic and Old C–Cube.[1]

Because the parties are familiar with the facts and procedural history of the case, we do not recite them here in detail except as necessary to our decision.

## I. BACKGROUND

On October 27, 1999, Harmonic and C–Cube announced that Harmonic would acquire DiviCom, Inc. ("DiviCom", a division of C–Cube). They filed Form 8—K with the Securities and Exchange Commission ("SEC"), which contained their proposed merger agreement. On April 24, 2000, the shareholders of both companies voted to approve the merger. On May 3, 2000, the merger was completed. Pursuant to the merger, Harmonic acquired DiviCom and Old C–Cube ceased to exist.[2]

On June 28, 2000, Plaintiffs filed a securities class action complaint in the district court alleging Defendants and several of their executives made a series of misleading statements for the purpose of obtaining shareholder approval of Harmonic's acquisition of C–Cube's DiviCom division

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Plaintiff Knollenberg seeks to represent a putative class of persons who purchased or otherwise acquired (1) shares of Harmonic between January 19, 2000 and June 26, 2000 (the "Class Period") and (2) shares of Old C–Cube prior to the merger (between January 19, 2000 and May 3, 2000).

2. C–Cube Microsystems was renamed C–Cube Semiconductor, Inc. (later renamed C–Cube Microsystems, Inc.) ("New C–Cube").

while they engaged in insider selling and thereby violated Sections 10b, 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"); Rules 10b—5 and 14a—9 promulgated under the 1934 Act; and Sections 11, 12 and 15 of the Securities Act of 1933 (the "1933 Act").

## II. LEGAL STANDARDS

We review *de novo* the district court's order dismissing Plaintiffs' Second Amended Complaint with prejudice for repeated failure adequately to state a claim for violations of the securities laws under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u—4(b), and Federal Rule of Civil Procedure 9(b). *See* 28 U.S.C. § 1291; *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir.1999). We review the district court's denial of leave to amend for abuse of discretion. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002).

## III. DISCUSSION

### A. Claims Under Section 10(b) of the 1934 Act and Rule 10b—5

To plead securities fraud under Section 10(b) of the 1934 Act or Rule 10b–5, Plaintiffs must allege: "(1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which [plaintiffs] relied (5) which proximately caused [the plaintiffs'] injury." *DSAM Global Value Fund v. Altris Software, Inc.* 288 F.3d 385, 388 (9th Cir.2002).

Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each act or omission. *See* 15 U.S.C. § 78u—4(b)(2); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002). By requiring particularized, detailed allegations showing a strong inference of scienter, the PSLRA was intended to "eliminate abusive and opportunistic securities litigation." *Gompper,* 298 F.3d at 897.

As to *forward looking statements* made by the Defendants, Plaintiffs must allege facts demonstrating a strong inference defendants made those statements with *actual knowledge that they were false.* 15 U.S.C. § 78u—5(c)(1)(B)(I); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.2002). A forward looking statement is any statement regarding "(1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *See No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 936 (9th Cir.2003). A forecast is actionably false if " 'there is no reasonable basis for the belief' " or " 'the speaker is aware of undisclosed facts tending seriously to undermine the statements' accuracy.' " *Provenz v. Miller,* 102 F.3d 1478, 1487 (9th Cir.1996) (citation omitted).

As to *non-forward looking statements* made by the Defendants, Plaintiffs must allege facts demonstrating a strong inference defendants made those statements with *intentional falsity or with deliberate recklessness as to the statements' falsity. Id.*

Claims that a defendant "could have" or "should have" known that the statements were false are insufficient to satisfy the standard for either forward looking or non-forward looking statements. "Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud under the PSLRA." *DSAM,* 288 F.3d at 391.

Plaintiffs allege that Defendants Harmonic and several of its executives (Ley, Dickson, Yost, Flatow, Nazarathy, Kvam-

me, Lane, Lemieux, Vaillaud), and New C–Cube and several of its executives (Balkanski, Lookabaugh, Brown, Foreman, McKinney, Padval, Valentine, Walcykowski, Futa and Reyes) made false or misleading statements in violation of Section 10(b) and Rule 10b—5.

Analysis of the Second Amended Complaint, however, demonstrates that there are no materially misleading statements or omissions, nor are there allegations raising a "strong inference of scienter."

### 1. *Misstatements or Omissions of Material Fact*

Plaintiffs allege Defendants sought to inflate the value of the stock of both companies to convince shareholders to approve the merger and to allow the C–Cube Defendants to sell their personal shares.

Plaintiffs allege Defendants published several false financial statements[3] and press releases during the class period that were materially misleading insofar as the financial documents failed to disclose: (1) AT & T's demand for Harmonic products in the fiscal year for 2000 had declined and would continue to do so; and (2) DiviCom's business had slowed following the October 1999 announcement of the pending merger causing lower revenues in the fourth fiscal quarter of 2000.

### A. *AT & T's Demand for Harmonic Products*

■ Plaintiffs allege Defendants made several statements that Harmonic was experiencing "strong demand" for its products from traditional operators such as AT & T, and these statements were misleading because Defendants knew AT & T had been cancelling orders for 2000 and the

record sales for the fourth quarter of 1999 were the result of the fact that AT & T was obligated to pay for large quantities of previously ordered custom-built product. As a result, Plaintiffs allege, Defendants knew that AT & T would place few new orders in the first quarter of 2000 and failed to disclose this information.

Plaintiffs fail to make precise allegations explaining how the alleged statement that Harmonic was experiencing "strong demand" for its products was misleading or untrue. According to Plaintiffs' allegations, Harmonic did not make a concrete prediction about future sales, only a statement about current sales. Further, Plaintiffs fail to allege exactly who at Harmonic knew about the alleged decline in sales from AT & T, when they knew it, how it was communicated to them, or how many sales orders AT & T had cancelled. Nor do Plaintiffs explain how the allegedly omitted facts would have been viewed by a reasonable investor as having significantly altered the total mix of information made available. *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1408—09 (9th Cir. 1996).

Without more, the statements that there was "strong demand" are insufficient to meet the heightened pleading standard under the PSLRA. *See Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir.2001) (statement that "sales growth was accelerating" does not adequately allege facts giving rise to claim under 10(b); rather "[p]laintiffs do not specify facts or evidence that show why the statement was false at the time it was made nor that defendants knew or with deliberate recklessness disregarded that it was false").

---

**3.** As discussed below, Plaintiffs allege misleading statements were made in the following documents: (1) eight joint C–Cube and Harmonic press releases; (2) Harmonic's 1999 Form 10—K and first quarter for 2000 Form 10—Q; (3) the March 23, 2000 Form S—4 Registration Statement; and (4) seven analyst reports.

Accordingly, Plaintiffs' allegations are insufficient to state a claim of fraud under Section 10(b) or Rule 10b—5 because Plaintiffs fail adequately to state facts establishing that the defendants knew the statements were false or acted with deliberate recklessness as to whether the statements were false.

### B. Scienter Regarding AT & T Statements

Not only did Plaintiffs fail to plead material misstatements or omissions with regard to Harmonics' sales to AT & T, Plaintiffs also failed adequately to plead specific facts which give rise to a "strong inference" of scienter that Defendants either knew their statements were false or made the statements with deliberate recklessness as to the statements' veracity. *See, e.g., Karacand v. Edwards*, 53 F.Supp.2d 1236, 1252 (D.Utah 1999) ("Where, as here, plaintiffs have not adequately pleaded falsity, it is unnecessary to determine whether they have adequately pleaded scienter."). Even assuming, *arguendo*, that Plaintiffs here have adequately pleaded violations under 10(b), they nonetheless still fail to plead facts that give rise to a "strong inference" of deliberate recklessness or actual knowledge.

■ Plaintiffs allege that the Harmonic Defendants "monitored inventory" through AT & T's weekly order forecasts and prepared internal reports based on information contained in such reports. From the knowledge obtained from monitoring the inventory, the Harmonic defendants "w[ere] aware that AT & T had been canceling and pushing out the scheduling of orders all throughout 1999" and that "AT & T had an excessive inventory and backlog from its late–1999 purchases of Harmonic products." Therefore, Plaintiffs allege, the Harmonic Defendants "knew [in early 2000] that AT & T's management of this inventory would result in a slowing of its purchases from Harmonic until this inventory was deployed by AT & T."

These allegations are insufficient to raise a "strong inference" of scienter. While courts have held that internal reports may support a strong inference of scienter, a complaint relying on the existence of such reports must contain "at least some specifics from those reports as well as such facts as may indicate their reliability." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230—31 (9th Cir.2004). Here, Plaintiffs fail to allege basic facts (such as author, date prepared, contents) regarding either AT & T's "weekly forecasts" or Harmonic's internal reports. *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir.1999) (dismissing claim where plaintiffs failed to state the source of information regarding the reports, how she learned of them, who drafted them, or which officers received them); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1231 (9th Cir.2002) (same).

Nor do Plaintiffs allege facts to show that any particular Harmonic Defendant was aware that AT & T had been cancelling orders. Plaintiffs fail to allege that the same person who read these internal reports was the person who released the alleged misleading statements. Plaintiffs' allegation the Harmonic Defendants therefore knew AT & T would be slowing its purchases of Harmonic inventory is unsupported by factual allegations. Finally, Plaintiffs' allegations with respect to the information allegedly provided by unnamed management sources is insufficient. *See Haft v. Eastland Fin. Corp.*, 772 F.Supp. 1315 (D.R.I.1991) (holding that recounting of analysts' opinions did not prove 'underlying factual support' necessary to create a "strong inference of scienter.").

## C. *DiviCom Sales*

■ Plaintiffs also allege that shortly after the announcement of the Harmonic—C–Cube (DiviCom) merger, several of DiviCom's largest customers withdrew their orders from DiviCom because such customers were concerned that DiviCom's acquisition by a cable company would "draw the company's focus and development efforts" from its satellite products to cable products.

Accordingly, Plaintiffs allege Defendants' statements favorable to DiviCom or the Harmonic—C–Cube (DiviCom) merger were misleading insofar as such statements presented DiviCom in a more positive light than was warranted given that DiviCom's largest customers had withdrawn orders. Thus, Plaintiffs allege that the Harmonic defendants:

> failed ... to disclose DiviCom's poor performance to the market, despite the fact that ... DiviCom's sales weakness had become 'common knowledge' among Harmonic management and employees well before the merger.

Plaintiffs' allegations are insufficient for several reasons. First, Plaintiffs fail to specify the *amount* by which DiviCom's sales declined. *See In re Vantive Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir.2002) (affirming district court's dismissal of plaintiff's claim under Section 10(b) where plaintiffs alleged misstatements regarding inferior product features that resulted in "slow sales" of such products).

Second, Plaintiffs fail to allege facts establishing Defendants had knowledge the merger announcement would precipitate a decline in orders. Here, Plaintiffs allege the *announcement* of the merger itself caused DiviCom's customer's to "back away." However, Plaintiffs do not allege facts demonstrating Defendants knew such would be the market reaction.

Third, Plaintiffs fail to plead the *source* of the information about DiviCom's future after announcement of merger plans with sufficient particularity. Rather, plaintiffs state that "former employees" are the source of this information that the lagging DiviCom sales were "common knowledge" among "Harmonic management." Significantly, however, Plaintiffs fail to allege facts demonstrating that the "former employees" consulted were in a position to know what management knew. *See In re Splash Tech. Holdings, Inc., Sec. Litig.*, 160 F.Supp.2d 1059, 1080 n. 15 (N.D.Cal. 2001) (reliance on "confidential informants" was not sufficient in the absence of "any information that the Court might use to evaluate the confidential informants' bases for alleging that the defendants had access to adverse information.").

Fourth, the allegation that Defendants misled investors by failing to publish DiviCom's financial results for 1999 and the first quarter of 2000 *before* the scheduled date of the merger is insufficient because Plaintiffs fail to allege facts demonstrating that any Harmonic defendant had a duty to publish these results prior to the merger. Silence, absent a duty to disclose, is not actionable. *See, e.g., Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.2002) (10b—5 prohibits misleading statements, not ones that are merely "incomplete.").

## D. *Scienter Regarding DiviCom*

■ Plaintiffs allege "DiviCom's sales weakness had become "common knowledge" among Harmonic management and employees "well before the merger" and defendants had an obligation to disclose such information to the market.

This allegation is insufficient to support a "strong inference" of scienter. The allegation that it was "common knowledge" that sales had declined does not comport

with the PSLRA's requirement that plaintiffs allege the required state of mind as to each Defendant who made an allegedly misleading statement and is therefore insufficient. *See* 15 U.S.C. § 78u—4(b)(2).

2. *Allegations of Insider Sales do not Raise a "Strong Inference" of Scienter*

■ Plaintiffs next allege that "insider selling" on the part of certain executives of C–Cube[4] demonstrates Defendants had "motive and opportunity" to mislead investors and such insider sales give rise to a strong inference of scienter.

In general, to determine whether a particular insider sale is "suspicious," courts consider the following factors: "(1) percentage of shares sold by the insiders; (2) timing of the sales; and (3) whether the sales were consistent with the trader's previous history." *See In re Silicon Graphics,* 183 F.3d at 986 (quoting *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1117 (9th Cir.1989)).

Plaintiffs' allegations are insufficient here because, under the terms of the merger agreement, the C–Cube Defendants were *required* to exercise their options. Defendants sold some of their stock to raise the money necessary to exercise their vested options and purchase the underlying shares. Accordingly, Plaintiffs fail to allege facts from which this court can conclude that insider selling gives rise to a "strong inference" of scienter.

B. *Claims Under Section 14(a) of the 1934 Act and Rule 14a—9 Promulgated Thereunder*

■ Plaintiffs also bring claims under Section 14(a) of the Securities Exchange

Act of 1934, 15 U.S.C. § 78n(a), and SEC Rule 14a—9 promulgated thereunder. 17 C.F.R. § 240.14a—9. Plaintiffs allege Defendant Harmonic, and certain of its executives (Ley, Nazarathy, Kvamme, Lane, Lemieux, and Vaillaud) and Defendant New C–Cube and certain of its executives (Balkanski, McKinney, Padval, Valentine, Futa and Reyes) made false or misleading statements in proxy solicitations that were distributed to certain putative class members for the purpose of inducing them to approve the proposed merger between Harmonic and C–Cube (DiviCom) in violation of Section 14(a) and Rule 14a—9.

To state a claim under Section 14(a), a plaintiff must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation, [rather than the particular defect in the solicitation materials], was an 'essential link in the accomplishment of the transaction.'" *Atlantic Coast Airlines Holdings v. Mesa Air Group, Inc.,* 295 F.Supp.2d 75, 81—82 (D.D.C.2003) (quoting *General Elec. Co. v. Cathcart,* 980 F.2d 927, 932 (3d Cir.1992)) (quoting *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)).

Moreover, the PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule 14a—9. *See In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp.2d 1248, 1267 (N.D.Cal.2000). However, unlike Section 10(b), Section 14(a) "lacks any reference to a 'manipulative device or contrivance ... to indicate a requirement of scienter." *Id.* at 1263. Accordingly, negligence is sufficient to support a claim for a violation of Section

4. Plaintiffs alleged insider trading on the part of Harmonic's executives as well. However, Plaintiffs concede on appeal that they are no longer asserting claims against Flatow and Yost. Accordingly, there are no remaining claims as to "insider sales" by Harmonic's executives.

14(a) for both forward looking and non-forward looking statements. *Id.* at 1267 ("a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence").

None of Plaintiffs' allegations state a claim under Section 14(a). First, statements that the merger was "in the best interests of the shareholders" were expressions of opinion. *See In re McKesson,* 126 F.Supp.2d 1248 at 1265. To state a claim upon which relief can be granted, plaintiff must allege "particularized facts showing that the opinion was both subjectively and objectively false." *See Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1095—96, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). Here, Plaintiffs do not allege such particularized facts. Nor can they show that the merger was not "in the best interests of the shareholders." Even if they could, Plaintiffs' Second Amended Complaint is bereft of facts alleged which demonstrate the directors did not believe that the merger was in the "best interests" at the time they made the recommendation, let alone a "strong inference" of negligence.

Second, Plaintiffs do not allege any facts that would lead an investor to the conclusion Defendants knew AT & T would not be buying as much Harmonic product in the future as it had in the past or that DiviCom's performance was down from its previous comparable levels.

Accordingly, Plaintiffs fail to state a claim for relief under Section 14(a) and Rule 14a—9.

### C. *Claims Under Sections 11 and 12 of the 1933 Act*

Next, Plaintiffs bring claims under Sections 11 and 12 of the Securities Act of 1933. 15 U.S.C. §§ 77k, 771(a)(2).

Claims brought under Sections 11 and 12 of the 1933 Act are *not* subject to the heightened pleading requirements of the PSLRA. *See In re Stac Electronics Sec. Litig.,* 89 F.3d at 1404. Rather, only those allegations of violations of Sections 11 and 12 which "sound in fraud" must be pleaded with particularity under Fed.R.Civ.P. 9(b). *See In re Stac,* 89 F.3d at 1404.

### 2. *Section 11(a) of the 1933 Act*

■ Defendants may be liable for violations of Section 11 for innocent or negligent misstatements or omissions. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Plaintiffs allege Defendant Harmonic and certain Harmonic executives (Ley, Dickson, Nazarathy, Kvamme, Lane, Lemieux and Vaillard) made material misstatements or omissions of material fact in Harmonic's Registration Statement. To state a claim under Section 11(a), a plaintiff must allege that: (1) the registration statement contained an omission or misrepresentation; and (2) the omission or misrepresentation was material. *See In re Stac Electronic Sec. Litig.,* 89 F.3d at 1403—04.

Plaintiffs allege Harmonic omitted the following material facts from its Registration Statement on Form S—4 filed with the SEC on March 23, 2000:(1) AT & T's orders from Harmonic had declined and (2) DiviCom's sales had slowed after the October 1999 announcement of the merger between Harmonic and C—Cube (DiviCom).

Plaintiffs allege that in its June 26, 2000 press release, Harmonic disclosed that it expected second quarter revenue of $74 million to $82 million, approximately *half* the amount previously represented by Defendants and expected by the market. The press release also stated that its reduction in earnings was due, in large part,

to the reduction in orders from AT & T. The next day, June 27, 2000, Harmonic's stock declined 47% from over $40 per share to just over $23 per share.

These claims are not "grounded in fraud" because Plaintiffs allege a basis for Section 11 liability other than fraud; i.e., the omission of a material fact from the Registration statement. Notably, plaintiffs do not rely on a unified course of fraudulent conduct or on the "wholesale adoption" of their securities fraud allegations. *See In re Daou Systems, Inc.,* 411 F.3d 1006, 1027—28 (9th Cir.2005). Plaintiffs also disclaim any allegations of fraud. While a disclaimer alone is insufficient to re-characterize a complaint whose gravamen is plainly fraud, here plaintiffs have made an effort to plead a non-fraudulent basis for Section 11 liability. *See In re Stac Electronics Sec. Litig.,* 89 F.3d at 1405 n. 2. Accordingly, Plaintiffs' claims under Section 11 are not subject to Fed. R.Civ.P. 9(b)'s particularity requirements. *See In re Exodus Communications, Inc., Sec. Litig.,* No. C—01—2661—MMC, 2005 WL 2206693, at *1 (N.D.Cal. Sept.12, 2005).

In sum, Plaintiffs' allegations are sufficient to state a claim under Section 11. Plaintiffs allege the Registration Statement contained omissions and allege that the omissions were material. Since the complaint is not "grounded in fraud," that is all that Section 11 requires. *See In re Stac Electronic Sec. Litig.,* 89 F.3d at 1403—04 (citing *Kaplan v. Rose,* 49 F.3d 1363, 1371 (9th Cir.1994)).

### 2. *Section 12(a)(2) of the 1933 Act*

■ Plaintiffs also bring claims under Section 12(a)(2) of the 1933 Securities Act against Defendants Harmonic and Ley.

To state a claim under Section 12(a)(2), Plaintiffs must allege: (1) that the prospectus contained an omission or misrepre-

sentation; and (2) that the omission or misrepresentation was material. *See In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1120 (D.Nev.1998) (citing *Pinter v. Dahl,* 486 U.S. 622, 646—48, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).

Here, Plaintiffs reiterate the allegations that the Harmonic Defendants omitted from their prospectus filed with the SEC on March 23, 2000 ("Prospectus") the facts that: (1) AT & T's orders of Harmonic had declined and (2) DiviCom's sales had slowed after the October 1999 announcement of the merger between Harmonic and C–Cube (DiviCom). Plaintiffs also allege Defendants were negligent in omitting to state these facts from their prospectus.

Plaintiffs have adequately pleaded a violation of Section 12(a)(2) by alleging that Defendants negligently omitted material facts from the prospectus. *See In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d at 1120. For the reasons discussed above regarding Plaintiffs' Section 11 claims, Plaintiffs' claims under Section 12(a)(2) are not "grounded in fraud" and, therefore, are not subject to Fed.R.Civ.P. 9(b).

### D. *Secondary Claims of Control Person Liability Under § 15 of the 1933 Act and § 20(a) of the 1934 Act*

Finally, Plaintiffs allege secondary claims for "control person" liability against Defendants Harmonic and Ley under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, and against Defendants Harmonic, New C–Cube, Ley and Balkanski under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

As to Plaintiffs' claims under Section 20(a) of the 1934 Act, Plaintiffs have not met the threshold requirement of adequately pleading a primary violation of the

federal securities laws. *See, e.g., Paracor Finance, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1161 (9th Cir.1996).

To state a claim for control person liability under Section 15 of the 1933 Act, this circuit requires the Plaintiff to plead: (1) the defendant had the power to influence or control the primary violator and (2) the defendant actively used this influence or control so as to be a "culpable participant" in the primary violation. *See Durham v. Kelly,* 810 F.2d 1500, 1503—04 (9th Cir. 1987).

■ Here, as to Defendant Ley, Plaintiffs plead the first prong adequately by alleging Ley's position as President, CEO and Chairman of the Board of Harmonic. *See In re Immune Response Sec. Litig.,* 375 F.Supp.2d 983 (S.D.Cal.2005) (allegations of control by virtue of board position or stock ownership sufficient to meet first prong). Plaintiffs plead the second prong adequately by alleging that Ley signed the Registration statement, and jointly with his co-defendants, actively caused the prospectus to be drafted, revised and approved. *Cf. In re Calpine Corp. Sec. Litig.,* 288 F.Supp.2d 1054, 1081 (N.D.Cal. 2003) (Plaintiffs failed to state a Section 15 claim when they did not allege defendants either signed or were involved in the preparation of the prospectus that contained material misstatements or omissions).

■ Plaintiffs' theory of control person liability against Defendant Harmonic is unclear, since it rests on allegations that Harmonic exerted control over itself. While Plaintiffs thus fail to state a claim against Harmonic under Section 15, they might be able to cure this defect by amending the complaint to identify a primary violator over whom Harmonic exercised control.

## IV.  Loss Causation

■ Finally, a private securities fraud action must include allegations of facts establishing economic loss to the plaintiffs caused by the defendants' fraud or misrepresentation. *Dura Pharmaceuticals, Inc. v. Broudo,* —— U.S. ——, ——, 125 S.Ct. 1627, 1629, 161 L.Ed.2d 577 (2005). Here, Plaintiffs failed properly to allege loss causation. Although they allege that the named representatives for the putative class purchased stock during the class period and that the stock price then fell, they do not allege that any of these same Plaintiffs sold stock at a loss caused by the Defendants' fraud or misrepresentation.

Accordingly, Plaintiffs have failed to allege a necessary element to their cause of action for securities fraud under Section 10(b) of the 1934 Act.

## V.  Conclusion

For the foregoing reasons, Plaintiffs have failed adequately to plead violations of Sections 10(b) and 14(a) of the 1934 Act under the heightened pleading standards of the PSLRA. After three attempts, Plaintiffs have failed to plead proper causes of action under the PSLRA. Furthermore, the defects in Plaintiffs' Second Amended Complaint cannot be remedied by further amendment. *See Desaigoudar v. Meyercord,* 223 F.3d 1020, 1026 (9th Cir.2000). Plaintiffs' claim under Section 20(a) of the 1934 Act likewise must also fail. Accordingly, we affirm the district court's dismissal with prejudice of Plaintiffs' 1934 Act claims.

Plaintiffs have, however, pleaded violations of Sections 11 and 12 of the 1933 Act adequately. Accordingly, we reverse the dismissal Plaintiffs' claims under Sections 11 and 12 of the 1933 Act.

Further, Plaintiffs' allegations are sufficient to state a claim against Ley under

Section 15 of the 1933 Act. Thus, we reverse the district court's dismissal of the Section 15 claim against Ley. We affirm dismissal of Plaintiff's Section 15 claim against Harmonic, but grant leave to amend. Each party shall bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.